Francis N. HASKINS, Daniel E. Noble, and Irma Rodriquez, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellees,

v.

Wayne A. STANTON, et al., Defendants-Appellants.

Nos. 85–3108, 85–3176.

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1986.

Decided July 9, 1986.

Maria Luz Corona, Bd. Atty., Gary, Ind., Gordon E. White, Jr., Office of Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Judith M. Haller, Leg. Service Program of Greater Gary, Inc., Gary, Ind., for plaintiffs-appellees.

Before BAUER and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

BAUER, Circuit Judge.

The district court entered an injunction to compel compliance with the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, by individual officials of the State of Indiana and Lake County, Indiana. These defendants appeal, contending that the plaintiffs, private citizens who applied for food stamps, have no private right to sue under the Act, that they are immune from plaintiffs' suit under the eleventh amendment, and that the trial judge abused his discretion in granting the injunction. We disagree and affirm the district court.

## I.

Plaintiffs are indigent persons whose applications for food stamps were not processed by the officials of the Lake County Department of Public Welfare within the deadlines established by the Food Stamp Act. Plaintiffs filed this class action against these officials and officials of the State of Indiana for failure to properly administer the food stamp program, alleging numerous violations of the Act. Plaintiffs then moved for a preliminary injunction to enjoin the defendants from further violating the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), hearings on this motion were first conducted by a magistrate, who issued proposed findings of fact and conclusions of law and recommended denying the motion. Plaintiffs objected and the matter was transferred to a district court judge, who conducted a *de novo* hearing.

The district court found that the defendants had violated eleven provisions of the Food Stamp Act. These violations included failure to allow an indigent person to file a food stamp application on the day he or she contacted the food stamp office, failure to determine within the statute's deadlines whether the applicants were entitled to benefits, failure to recertify eligible households without an interruption of benefits, and failure to provide bilingual staff and notices in areas where at least 100 families speak the same non-English language. Therefore, the district court issued the injunction and ordered the defendants to submit a plan for corrective action to the court. The trial judge also established a time period in which to implement the plan.

## II.

Officials of both Lake County and the State of Indiana contend that the plaintiffs do not have a private right of action to redress violations of the Food Stamp Act. The defendants argue that the administrative remedies provided by the Act are the sole remedies available to the plaintiffs. Although the Act does not explicitly set forth any private right of action, we must

determine whether a private remedy is implicit in the statute under the test established by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort v. Ash,* the Supreme Court stated that we must consider four factors in making this determination. First, does the statute create a federal right in favor of plaintiffs? Second, did the legislature indicate an intent to allow a private remedy or preclude one? Third, is a private right of action consistent with the underlying purposes of the legislative scheme? Finally, is the right of action a traditional state law claim in an area basically the concern of the states so that it would be inappropriate to infer a private remedy based solely on federal law?

The defendants do not dispute that the Food Stamp Act creates a federal right for the benefit of persons entitled to food stamps. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). Second, it is apparent that Congress intended to permit a private right of action for violations of the Act. In 1977, Congress amended the provisions of the Act that provide the Department of Agriculture with means to enforce compliance with the Act by state officials. After reviewing the remedies, the House of Representatives Agricultural Committee Report stated:

> The administrative remedies against the state contained in section 11(f) and elsewhere should not be construed as abrogating in any way private causes of action against states for failure to comply with federal statutory or regulatory requirements.

H.R. REP. No. 464, 95th Cong., 1st Sess. 398, *reprinted in* 1977 U.S. CODE CONG. & AD. NEWS 1978, 2327. This report recognized the plethora of cases prior to 1977 involving private law suits to enforce compliance with the Act by state officials. *Id.* at 414, *reprinted in* 1977 U.S. CODE CONG. & AD.NEWS at 2342. Similarly, when the enforcement provisions of the Act were again amended in 1980, the Committee's

report recommended that the Department of Agriculture recoup legal expenses it might incur defending employees in private civil actions that triggered a later criminal prosecution by the United States. H.R. REP. No. 788, 96th Cong., 2d Sess. 145, *reprinted in* 1980 U.S.CODE CONG. & AD. NEWS 843, 978. The report specifically discussed a private lawsuit to enforce compliance with the Act by state officials, *Bush v. Bays,* 463 F.Supp. 59 (E.D.Va.1978). *Id.* at 144, *reprinted in* 1980 U.S. CODE CONG. & AD.NEWS at 977. The explicit statement that administrative remedies do not abrogate a private party's right to sue and the specific acknowledgement of cases based on that right clearly indicate congressional intent to allow a private remedy based on the Food Stamp Act.

We also fail to see how plaintiffs' suit to force these state officials to comply with the Act is inconsistent with the Act's purpose of assuring a nutritionally adequate diet for persons in this country. Allowing a private suit to compel compliance with the Act promotes the right of eligible persons to receive food stamps. Finally, this suit does not involve a traditional state law claim, but is based solely on a federal right created in the recent past. It is therefore appropriate to infer a private remedy based on federal law. In view of these factors, we conclude that plaintiffs have a private right of action to enforce compliance with the Food Stamp Act by these state officials.[1]

### III.

■ The State of Indiana officials contend that they are immune from the type of relief sought by the plaintiffs under the eleventh amendment. We will not recount their argument, which neglects the Supreme Court's holding in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As the Supreme Court recently stated in *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104

---

1. For this reason, the district court was also correct in denying the State of Indiana officials' earlier motion to dismiss for failure to state a cause of action.

S.Ct. 900, 79 L.Ed.2d 67 (1984) (Pennhurst II),

> *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young,* such a suit would not be one against the State since the federal law allegation would strip the state officer of his official authority.

104 S.Ct. at 909. *Edelman* therefore held that the eleventh amendment did not preclude a private class action against state officials for their failure to process and issue benefits within federally established time limits under a jointly administered federal-state welfare program. The case at bar presents an almost identical situation, and we therefore hold that the eleventh amendment does not preclude plaintiffs' suit.

### IV.

■ The officials of both the State of Indiana and Lake County contend that the trial judge abused his discretion in granting plaintiffs' motion for a preliminary injunction.[2] The defendants first argue that plaintiffs have an adequate remedy at law provided by the Indiana Department of Public Welfare's administrative hearing procedure, which the trial judge found complied with the Food Stamp Act. This hearing procedure does provide a remedy to food stamp applicants whose applications are denied. Plaintiffs do not complain, however, about the review procedure that exists after the county officials have made a decision on a food stamp application. Plaintiffs' suit is based on the county officials' lengthy delay in making the initial decision to grant or deny an applicant food stamps. As the district court noted, the administrative hearings do nothing to re-

dress violations of the Act that prevent applicants from obtaining a timely decision on their initial food stamp application. 621 F.Supp. 622, 627–28 (1985). We therefore do not find that the trial judge abused his discretion in ruling that plaintiffs did not have an adequate remedy at law.

■ The Lake County officials also contend that the plaintiffs have failed to make a showing of irreparable harm. The Lake County officials simply argue that the fact that it took the plaintiffs five years to obtain this injunction after they filed suit indicates that the harm was not serious enough to justify granting the injunction. This argument may have some merit when the seriousness of the alleged harm is somewhat doubtful, but it has none in this case because even the Lake County officials do not assert that the deprivation of adequate nutrition for long periods of time is not a serious harm. Moreover, the Lake County officials ignore the fact that long delays in this case occurred because the original trial judge died before ruling on the motion, the magistrate subsequently assigned the case was appointed to the district court before he could rule on the motion, and the motion proceeded to another magistrate and another district judge before the injunction was finally issued. Further, the second magistrate's ruling was delayed by a death in his family and by bad weather that prevented the parties from appearing in court. Lake County does not explain how these delays reflect a lack of urgency by the plaintiffs in seeking relief, and we will not hold the plaintiffs responsible for acts of God or the Chief Executive, or for delays inherent in the judicial process. We agree with the trial judge that the deprivation of food "is extremely serious and is quite likely to impose lingering, if not irreversible, hard-

---

**2.** As an initial matter, all the defendants argue that the hearing conducted by the trial judge was somehow "tainted" because he did not review the entire transcript of the proceedings conducted by the magistrate. The trial judge's decision, however, was based on the magistrate's findings of fact, with the exception that he made additional findings based on the parties' written admissions. Moreover, the defendants make no specific objections to any findings of fact: they simply disagree with the trial judge's conclusions of law. We therefore have no reason to invalidate any of the trial judge's findings of fact.

ships upon recipients." 621 F.Supp. 622, 627–28 (1985) (citing *Smith v. Miller*, 665 F.2d 172, 177 (7th Cir.1981)).

 The State of Indiana officials contend that the harm to the plaintiffs does not outweigh the burden imposed on them by the injunction, and all the defendants contend that the injunction disserves the public. Because the defendants are required to comply with the Food Stamp Act under the terms of the Act, we do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it. We also fail to see how enforcing a statute designed to promote the public welfare disserves the public. The State of Indiana officials argue that the injunction is unduly harsh because they will face contempt proceedings every time they make a mistake that results in an inadvertant delay in processing a food stamp application. We do not believe, however, that this is a reasonable interpretation of the injunction.

Although the Food Stamp Act literally requires strict compliance with its provisions, Congress anticipated that a small percentage of cases would not be dealt with properly. *See* 7 U.S.C. § 2025(c) & (d) (1983). As with any program of this size, a few inadvertent errors are inevitable, and we are confident that the district court will not exercise its equitable powers to hold the state in contempt for every minor, inadvertent infraction of the Act if the court is satisfied that the officials are complying with the Act as strictly as is humanly possible. This case, however, does not concern infrequent and isolated violations. For example, when the federal government monitored the Lake County program for a period from late October through November 1984, it found that only four out of forty-four cases that were not timely processed had been properly held over for adequate verification of the applicant's identity. For that same period, benefits were not issued within the statute's deadlines in eighty-three out of eighty-six "expedited" cases.

We therefore find that the trial judge did not abuse his discretion in granting the injunction, and, for the reasons stated above, the order granting the injunction is

AFFIRMED.