Leonicia QUINONES, et al., Plaintiffs,

v.

Gregory L. COLER, et al., Defendants.

No. 86C5712.

United States District Court,
N.D. Illinois, E.D.

Jan. 5, 1987.

Michael Collins, Paul B. Marcovitch, Joseph A. Antolin, Jeanette P. Tamayo, Legal Assistance Foundation of Chicago, Ill., for plaintiffs.

Owen M. Field, Karen Konieczny, James C. O'Connell, Sp. Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eight named plaintiffs seek injunctive and declaratory relief against Illinois Department of Public Aid ("IDPA") Director Gregory Coler and Illinois Food Stamp Program Director Timothy Grace on behalf of the named plaintiffs and a class of similarly situated persons (the "Class"). Each plaintiff alleges defendants have injured her (or, in one instance, him) and the Class by violating the Food Stamp Act (the "Act," 7 U.S.C. § 2020(e)(1)(B) [1]) and related regulations.

Defendants have moved to dismiss the action under Fed.R.Civ.P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2] For the

---

1. Further citations to the Act will take the form "Section ...," employing the Title 7 numbering rather than the Act's internal numbering. All citations to regulations appearing in C.F.R. Title 7 will take the form "Reg. § ..."

2. Defendants' motion also claims the Eleventh Amendment bars some of the relief sought, but their supporting memoranda do not expand on or lend support to that bare conclusion. This

Court need not do defendants' legal work for them. It will ignore that claim, just as defendants have (Eleventh Amendment issues are waivable and thus non-jurisdictional, *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)). It should also be noted our Court of Appeals rejected Eleventh Amendment claims in the parallel *Haskins* case cited and discussed

reasons stated in this memorandum opinion and order, defendants' motion is denied.

### Facts

Congress adopted the Act in 1964[3] to help low-income households maintain an adequate diet.[4] In 1977 Congress amended the program,[5] in part by adding Section 2020(e)(1)(B):

The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation—

(1) that the State agency shall ... (B) use appropriate bilingual personnel and printed material in the administration of the program in those portions of political subdivisions in the State in which a substantial number of members of low-income households speak a language other than English....

Under Reg. § 272.4(b), to comply with Section 2020(e)(1)(B) the state agency responsible for administering the food stamp program must provide bilingual staff and printed materials in certain "project areas" where there are a minimum number of single-language minority households. In Illinois, IDPA is designated to administer the program (Ill.Rev.Stat. ch. 23, ¶¶ 12–4.6 and 12–4.13) and is required to do so in conformity with the Act and its regulations (Section 2020(e); Reg. § 272.2).

Each named plaintiff is a member of a single-language (Spanish) minority household that is receiving or has applied for food stamps under the Act. Plaintiffs allege their households are located in project areas where Reg. § 272.4(b) requires IDPA to provide Spanish-speaking staff and printed materials. On September 9, 1986

this Court, acting under Rule 23(b)(2), certified a class consisting of:

All Illinois residents who, since September 26, 1983:

(1) have been, are or will be members of a single language (Spanish) minority household as defined by 7 C.F.R. § 272.-4(b)(1); and

(2) have been, are or will be residing in Illinois Department of Public Aid project areas or certification offices which meet the requirements of 7 C.F.R. § 272.-4(b)(3) and (b)(4); and

(3) have tried to apply, are trying to apply, will try to apply, have applied, are applying or will apply for food stamp benefits.

According to Complaint ¶¶ 13 and 15–17, defendants have failed to comply and have no intention of complying with Reg. § 272.-4(b) throughout the State of Illinois. Named plaintiffs and the Class therefore seek (1) a declaration that defendants' actions violated Reg. § 272.4(b) and (2) an injunction requiring defendants to comply with that regulation.[6]

### Defendants' Contentions

Defendants level a dual attack on the Complaint, asserting it fails to establish an Article III case or controversy and also fails to state a cause of action. Both those arguments lack merit. *Haskins v. Stanton,* 794 F.2d 1273 (7th Cir.1986) is very much in point—indeed, it is potentially dispositive of defendants' motion.[7] But because *Haskins* does not address defendants' arguments directly, this Court must deal with them in turn.

### Article III Case or Controversy

Existence of an actual "case" or "controversy" in Article III terms is a

---

extensively later in this opinion (794 F.2d at 1275–76).

**3.** Pub.L. No. 88–525, 78 Stat. 703 (1964) (currently codified at 7 U.S.C. §§ 2011–2029).

**4.** See Section 2011.

**5.** Pub.L. No. 95–113, 91 Stat. 958 (1977).

**6.** Plaintiffs also ask for lost food stamp benefits pursuant to Reg. § 273.17, plus payment of their costs and attorneys' fees.

**7.** Surprisingly, neither plaintiffs' nor defendants' memoranda cited *Haskins,* although that case had been decided two months before defendants filed their motion. Plaintiffs brought *Haskins* to this Court's attention in a post-briefing November 6, 1986 letter.

threshold prerequisite to federal jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983). For that purpose a plaintiff must show:

1. some actual or threatened injury
2. caused or threatened to be caused by defendants' illegal conduct and
3. redressable by the judicial intervention and relief sought.

*Foster v. Center Township of LaPorte County*, 798 F.2d 237, 241–42 (7th Cir. 1986).

■ In a class-action situation, such a case or controversy must exist between a named class representative and defendants to permit that named plaintiff to seek relief on behalf of himself or herself and the other members of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Because plaintiffs here are seeking injunctive relief rather than damages for prior wrongs, mere past exposure to illegal activity is not enough to create a case or controversy. Plaintiffs must show a sufficiently real and immediate threat of future harm to satisfy Article III (*id.* at 495–96, 94 S.Ct. at 675–76).

*Haskins*, 794 F.2d at 1275 expressly recognized an implied private cause of action to enforce the provisions of the Food Stamp Act. Plaintiffs there were persons "whose applications for food stamps were not processed by [Indiana] officials ... within the deadlines established by the Food Stamp Act" (*id.* at 1274). Those plaintiffs were granted an injunction order-

ing defendants to rectify 11 separate violations of the Act, including (*id.*) the failure to provide bilingual staff and notices where necessary.

■ That decision would, by definition, have been beyond the Court of Appeals' power had the *Haskins* plaintiffs not stated a case or controversy for injunctive relief. Because Article III standing is a prerequisite for federal jurisdiction, every federal court—trial and appellate—is obligated to consider that issue whether the parties have raised it or not. *Foster*, 798 F.2d at 241. But because *Haskins* did not directly address the question of Article III standing, this Court must do so (*Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 625 (7th Cir.1986)):

> When a court resolves a case on the merits without discussing its jurisdiction to act, it does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light.[8]

Defendants argue plaintiffs have not alleged an actual injury sufficient to satisfy Article III's requirements. They claim only a continuing wrongful denial of benefits or a past denial without reimbursement would be a sufficient injury, and named plaintiffs have made no such allegations.

■ Defendants are dead wrong.[9] All eight named plaintiffs have suffered a cognizable injury for Article III purposes, and two of them have in fact alleged injuries that satisfy even defendants' constricted (and mistaken) reading of Article III.

---

8. [Footnote by this Court] Even so, any regular reader of our Court of Appeals' opinions cannot have failed to note its keen awareness of jurisdictional issues, often raised by that Court (quite properly) sua sponte when a trial court or the parties have neglected to do so. This Court thus cannot help but view *Haskins* as probative of the conclusion this opinion arrives at independently: Jurisdiction exists here.

9. Plaintiffs argue that (1) the Act and its regulations give them a "right" to receive notices in Spanish regarding their benefits and to have Spanish-speaking employees available at IDPA offices and (2) a violation of that "right" alone (regardless of its effect on their receipt of food

stamps) causes sufficient injury for Article III purposes. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973) appears to give some support to their argument. However, *Haskins*, 794 F.2d at 1275 discusses only "a federal right for the benefit of persons entitled to food stamps" and private suits to promote "the right of eligible persons to receive food stamps." This Court need not address the full sweep of plaintiffs' contention, because they also assert injury to their entitlement to food stamps—the very right recognized and enforced in *Haskins*. That injury is clearly sufficient for Article III purposes.

On that last point, migrant worker Isabel Llanos ("Llanos") alleges she has received no food stamps in 1986 (Complaint ¶ 14(c)). Eloisa Jazo ("Jazo") similarly alleges she received no food stamps for the months of December 1985 through February 1986 and has not been reimbursed for that wrongful denial of benefits (Complaint ¶ 14(i)). On those allegations, two of the named plaintiffs have thus clearly satisfied what defendants say Article III requires.[10]

Leaving that aside, though, defendants ask this Court to require more than our Court of Appeals did in *Haskins*. Every named plaintiff in this case suffered unnecessary delays in receiving benefits he or she was eligible to receive, because defendants did not provide forms and notices in Spanish or Spanish-speaking workers to process claims as required by Reg. § 272.-4(b). Such injuries are clearly on a par with those suffered by the *Haskins* plaintiffs, who failed to receive their benefits within the deadlines under the Act.

Six named plaintiffs in this case were forced to go without food stamps for from one to five months. Even though five of them later received those food stamps, they were still injured by being forced to spend money from their limited budgets on food while their benefits were being wrongfully withheld. Belated reimbursement in the form of food stamps should not be viewed as a full remedy under those circumstances [11] (see *Harrington v. Blum*, 483 F.Supp. 1015, 1021 (S.D.N.Y.1979), *aff'd mem.*, 639 F.2d 768 (2d Cir.1980)).

Were defendants' argument accepted, IDPA could violate federal law with impunity so long as it eventually paid the benefits that had been wrongfully delayed or denied. Indeed, it could even (as in Jazo's case, see n. 10) wait until suit was filed, then pay the withheld benefits and say "no case or controversy." Given *Haskins'* recognition of a private cause of action, any such rule would impermissibly distort the thrust of provisions such as Reg. § 272.-4(b), specifically designed to facilitate access to benefits under the Act. Section 2020(e)(1)(B) and that regulation were obviously intended to prevent the types of delays and denials named plaintiffs here have suffered. Because plaintiffs have alleged such wrongful denials were caused by IDPA's noncompliance with Reg. § 272.4(b) (Complaint ¶ 17), they clearly have established a case or controversy for relief from such violations.

Defendants purport to have another string to their bow: Even if named plaintiffs might challenge defendants' *past* alleged violations of Reg. § 272.4(b), they have assertedly failed to establish a case or controversy for injunctive relief as required by *Lyons*, 461 U.S. at 105–10, 103 S.Ct. at 1666–69. That argument also fails.

In *Lyons* an individual victim of a police practice of applying "chokeholds" to arrestees was held to have stated a case or controversy for a damage claim (*id.* at 105, 109, 103 S.Ct. at 1666–69). As for injunctive relief, though, the Supreme Court rejected his claim on Article III grounds because the likelihood of his again being stopped by the police and again being subjected to a chokehold was simply too remote (*id.* at 106–09, 103 S.Ct. at 1667–69).

Def.Mem. 10 (emphasis in original), paraphrasing *Lyons*, 461 U.S. at 105–06, 103 S.Ct. at 1666–67, claims:

> Plaintiffs must allege that all caseworkers in the relevant IDPA local offices

---

**10.** Def.Mem. 10 n. 4 asserts Jazo *was* reimbursed in April 1986 and Llanos *did* receive her food stamps in August 1986 (after this action was brought). Although evidence outside the pleadings may be adduced where subject matter jurisdiction is at issue, plaintiffs have chosen to ignore defendants' statements—perhaps justifiably, because defendants offer nothing to support those bare assertions. But even on the assumption that defendants are factually correct, each of Jazo and Llanos has still suffered wrongful deprivations of her benefits for three

or more months. IDPA's later issuance of food stamps does not erase those injuries.

**11.** Or is "Justice delayed is justice denied" a mere empty catchphrase? Compare *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

always send English-language notices to Spanish language minority low income applicants serviced by those officers, that no bilingual staff is *ever* available, and that IDPA orders or authorizes this procedure.

That attempted extension of the *Lyons* doctrine distorts the wholly conjectural prospect of a future claim presented by the circumstances in that case: a single plaintiff, a single past illegal act by defendant, and the necessity of a future violation of the law by plaintiff before he *might* again be subjected to the illegal conduct. Simply to state that "iffy" string of conditions displays how totally different this case is.

Unlike the remote prospect of the *Lyons* plaintiff being exposed once again to the illegal chokehold, here almost every named plaintiff faces exposure to defendants' conduct on a full-time and continuous basis. Seven of the eight plaintiffs are presently receiving food stamps, and four have been receiving them for five or more years. This Court cannot ignore economic realities. No speculation is needed to recognize that most of the named plaintiffs will have to apply or reapply for food stamps in the future and will be qualified to receive them under the Act.

That furnishes the key element missing in *Lyons*. And as for the other side of the relationship—the pervasiveness of defendants' illegal conduct—it cannot be blinked that plaintiffs' continued eligibility for food stamps carries with it a real threat of (1) future violations of Reg. § 272.4(b) by defendants and (2) future injury from those violations. Although that regulation has been in force since 1979, IDPA is still allegedly not fully complying with its requirements. Such "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury"

(*O'Shea*, 414 U.S. at 496, 94 S.Ct. at 676). To be sure, plaintiffs do not allege IDPA *never* has Spanish-speaking personnel or *never* uses Spanish language printed materials, but named plaintiffs' numerous allegations of past violations establish a pervasive pattern of misconduct. And that creates a case or controversy for injunctive relief, see *Allee v. Medrano*, 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566 (1974).[12]

Finally, defendants also challenge the causation element needed for a case or controversy. They contend it is not enough to allege (Complaint ¶ 17) plaintiffs' injuries were caused by defendants' violations of Reg. § 272.4(b). Defendants are, of course, right in saying that even if they had fully complied with the regulations, some individuals would still be injured by delays in receiving their food stamps because of unavoidable bureaucratic mistakes. But that is a total irrelevancy. Such mistakes are not the issue in this case. Instead, plaintiffs' Complaint seeks to prevent injuries caused by defendants' willful failure to comply with federal law. Defendants' unsupported argument that bureaucratic errors rather than IDPA's non-compliance with Reg. § 272.4(b) caused all plaintiffs' injuries cannot overcome plaintiffs' wholly plausible allegation that those injuries were caused by the violations.

Little wonder, then, that *Haskins* found a group of plaintiffs—totally akin to plaintiffs here—who had been injured by a governmental agency's violations of the Act had stated a viable claim. That decision implicitly acknowledged the existence of a case or controversy for injunctive-relief purposes. And the just-completed analysis has made that implicit acknowledgement explicit. Named plaintiffs have Article III

---

12. This case is thus distinguishable from *Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 2690, 46 L.Ed.2d 561 (1976), which overturned a grant of injunctive relief because it was based on an "unadorned finding of a statistical pattern." Here plaintiffs have alleged a continued and persistent failure by defendants to comply with the law, and that establishes a "pervasive pattern" as required by *Allee*. There (416 U.S. at 815, 94 S.Ct. at 2200) the existence of a pervasive pattern was found relevant to whether an actual controversy existed and whether injunctive relief was appropriate. Those two considerations are often interrelated (*O'Shea*, 414 U.S. at 499, 94 S.Ct. at 677).

standing to seek injunctive relief to prevent the real and immediate threat of further harm to themselves and the entire Class.

### Failure To State a Cause of Action

In considering defendants' alternative Rule 12(b)(6) motion, this Court must accept as true all well-pleaded allegations of the complaint. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). Those allegations need only meet the permissive test of *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984):

> A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

■ In that light defendants' Rule 12(b)(6) contention is both unclear and puzzling. They apparently argue no cause of action has been stated because IDPA is in fact complying with Reg. § 272.4(b). They point to Reg. § 272.4(b)(5):

> The State agency shall insure that certification offices subject to the requirements of paragraph (b)(3) or (4) of this section provide sufficient bilingual staff or interpreters for the timely processing of non-English-speaking applicants.

Because plaintiffs fail to allege their applications were not timely processed, defendants say no true violation of Reg. § 272.-4(b) has been charged.

That argument wholly ignores the other parts of Reg. § 272.4(b): Its subparagraphs (2), (3) and (4) require IDPA to provide printed materials in Spanish and bilingual staff or interpreters in appropriate areas. Plaintiffs have alleged IDPA has not done that in the "project areas" in which they live, and injury—in the form of delays or denials of benefits—has been suffered as a result. IDPA's alleged compliance with Reg. § 272.4(b)(5) would not remedy those violations, recognized as actionable under *Haskins.*

In any case, it would be a nonsensical reading of Reg. § 272.4(b)(5) that would require only the timely processing of applications, regardless of the correctness of such processing. That reading would be doubly nonsensical where the processing errors are caused in part (as the Complaint says) by IDPA's failure to have a sufficient number of Spanish-speaking workers at the appropriate offices.

■ This Court instead reads Reg. § 272.4(b)(5) in the only sensible way—as requiring IDPA to "provide sufficient bilingual staff or interpreters for the timely [and correct] processing of non-English speaking applicants." Plaintiffs allege defendants have not provided such staff at their area office and their applications were not correctly processed—allegations totally sufficient in pleading terms.

Defendants then proceed to attack the Complaint's Prayer for Relief. As *Hishon* makes clear, on a Rule 12(b)(6) motion the question is not whether plaintiffs are entitled to the specific relief they have requested, but rather whether they would qualify for any relief if they prove the Complaint's allegations. On that score *Haskins,* 794 F.2d at 1276–77 is dispositive. If plaintiffs prove defendants have violated the Food Stamp Act by failing to comply with Reg. § 272.4(b) and have thereby injured plaintiffs and the Class by interfering with their entitlement to benefits under the Act, the Class will be entitled to some form of injunctive relief.

■ Ultimately plaintiffs may not be able to prove the Complaint's allegations. Ultimately the Class may not be entitled to exactly the type of injunctive relief the Complaint seeks. But such ultimate possibilities are not the stuff of which a Rule 12(b)(6) motion is fashioned. That motion too must be denied.

### Conclusion

Some or all named plaintiffs have established a significant threat of future harm because of defendants' alleged violations of the Food Stamp Act and have thus stated a case or controversy for injunctive relief as required by Article III. Their Complaint also contains allegations that, if proved, will entitle the Class to some type of relief

 

from this Court. Defendants' motion is denied in its entirety, and they are ordered to answer the Complaint on or before January 15, 1987.