United States Court of Appeals,

Fifth Circuit.

No. 91–6091.

Charles D. CRONEN, Plaintiff–Appellant,

v.

TEXAS DEPARTMENT OF HUMAN SERVICES, Jean Roberts, Ann Valdez–Haines, Donna L. Burns, Socorro Alonzo, and the State of Texas, Defendants–Appellees.

Nov. 23, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Charles Cronen brought suit against the defendants seeking relief for denial of food stamp benefits. The district court granted summary judgment in favor of the defendants on grounds of Eleventh Amendment and qualified immunity. We affirm in part, vacate in part, and remand.

I.

Cronen, an indigent Vietnam veteran, resides in Harris County, Texas, where he owns a parcel of land.[1] Cronen also owns an old inoperative van that he keeps on the property. Around the van, Cronen has constructed a series of shacks which, along with the van, sometimes serve as his shelter. These shacks, unfortunately, do not keep out thieves, who stole some of the tools he uses to build his shacks.

To prevent further theft of what few possessions he has, Cronen rented private storage space. Cronen also claims that he lives in his storage space from time to time because it has electricity, which he cannot afford to have in his shacks. Because, according to Cronen, the postal service will not deliver mail to his property, he also rents a post office box.

Cronen works when he can find employment. His work, however, does not provide sufficient

---

[1] We describe the facts of this case based upon the pleadings and exhibits filed by Cronen. Our description of the facts should not be construed as establishing their truth for purposes of further proceedings in this action.

resources for him to rent an apartment. He also finds work more easily during certain periods of the year, causing his income to fluctuate from month to month.

## II.

Since April 1985, Cronen periodically has received food stamp benefits. He alleges, however, that the Texas Department of Human Services improperly calculated his benefits. Cronen wished to deduct the following expenses as shelter costs for purposes of computing his food stamp benefits: building materials used to construct his shacks, storage rental, and his post office box. He also desired to have his benefits calculated using income averaging and contended that he should be able to deduct the cost of travel to the food stamp office. Cronen raised these claims in several unsuccessful administrative appeals. Defendants Jean Roberts, Ann Valdez–Haines, and Donna Burns conducted the hearings on Cronen's claims; defendant Socorro Alonzo served as the other defendants' supervisor and Cronen's caseworker.

In February 1989, Cronen filed a *pro se* complaint alleging that defendants wrongfully denied him food stamps to which he was entitled. He sought restoration of his past benefits, an injunction against future violations of the Food Stamp Act (the "Act"), $25,000 for suffering as a result of lost benefits, and costs and attorney's fees. His complaint alleged violations of numerous federal statutes, the Constitution, and the common law.

On September 1, 1989, the district court dismissed Cronen's suit for want of prosecution pursuant to its Local Rule 13(b). He appealed, and we vacated and remanded for further proceedings. On January 15, 1991, defendants moved to dismiss on grounds of improper service, limitations, sovereign immunity, qualified immunity, and quasi-judicial immunity. Cronen then filed a supplement to his complaint alleging 42 U.S.C. § 2000d–7, 28 U.S.C. § 1337, and various sections of the Act, 7 U.S.C. § 2011 *et seq.,* as additional sources of jurisdiction and relief.

The district court treated the motion to dismiss as a motion for summary judgment. Defendants submitted no summary judgment evidence, relying solely upon Cronen's complaint. The district court granted the motion, holding that the Eleventh Amendment barred the claims against Texas and the Texas Department of Human Services and that the individual defendants were entitled

to qualified immunity. Cronen appeals each of these holdings.

## III.

Because this case comes to us on summary judgment, we review the district court's ruling *de novo* to determine whether there is any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). We view the evidence, and reasonable inferences from it, in the light most favorable to the nonmovant, Cronen, and will affirm only if the defendants "ha[ve] established [their] right to the judgment with such clarity that the nonmoving party cannot recover ... under any discernible circumstances." *Id.* at 961 (citations and single quotation marks omitted).

## A.

We first address Cronen's claims against Texas (the "state") and the Texas Department of Human Services (the "agency") for damages and injunctive relief. The state and the agency properly argue that they are not "persons" for purposes of liability under 42 U.S.C. § 1983 (1988). *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). The district court properly dismissed this claim pursuant to Fed.R.Civ.P. 12(b)(6).

Cronen asserts an implied cause of action under the Act as a further basis for relief.[2] In *Victorian v. Miller,* 813 F.2d 718 (5th Cir.1987) (*en banc* ), we decided that a private right of action is available under section 1983 to remedy violations of the Act. We reserved judgment, however, on the question of whether the Act itself creates an implied cause of action. *Id.* at 724 n. 13. Because we hold that the Eleventh Amendment bars Cronen's claims against the state and the agency, we again decline to address this issue.[3]

---

[2] Cronen originally raised the possibility of an implied cause of action in an amendment to his original complaint. He apparently failed to obtain leave of the district court to file his amendment and simply added an additional paragraph without reiterating the content of his original complaint. We find no objection to these defects in the record or in defendants' brief. We therefore treat the additional arguments as part of Cronen's claim on appeal. *See Lewis v. Thigpen,* 767 F.2d 252, 259 (5th Cir.1985) (*pro se* litigants not held to strict compliance with formal pleading rules).

[3] As our holding raises the possibility that this issue will arise on remand, we add a brief comment to guide the district court. Cronen may seek to amend his complaint on remand to pursue injunctive relief against one or more state officials in their official capacity. Because such a claim could not be brought under § 1983, *see Will,* 491 U.S. at 71, 109 S.Ct. at 2312, Cronen

B.

"It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* On the other hand, Congress may abrogate Eleventh Amendment immunity in certain circumstances. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Cronen argues that Congress abrogated Eleventh Amendment Immunity for violations of the Act in passing 42 U.S.C.A. § 2000d–7 (West Supp.1992), which provides in part,

(a) General provision

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 794 of Title 29, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

Cronen contends that the Act constitutes a "Federal statute prohibiting discrimination by recipients of Federal financial assistance." As authority for this proposition, he relies upon 7 U.S.C.A. § 2020(c) (West 1988), which provides, "In the certification of applicant households for the food stamp program, there shall be no discrimination by reason of race, sex, religious creed, national origin, or political beliefs."

We find this argument unpersuasive. Section 2000d–7(a)(1) lends itself to at least two interpretations. One can, as Cronen urges, interpret the final clause as abrogating Eleventh Amendment immunity under any federal statute prohibiting discrimination and involving the

could pursue that claim only as an implied cause of action. In this regard, we note that the Seventh Circuit has held that the Act creates such an implied cause of action. *See Haskins v. Stanton,* 794 F.2d 1273, 1275 (7th Cir.1986). Our reasoning in *Victorian* appears consistent therewith.

distribution of any federal financial assistance.[4]  Under Cronen's interpretation, the general subject matter of the statute makes no difference.

We find a second interpretation of the statute more persuasive, concluding that Congress intended to abrogate Eleventh Amendment immunity only for statutes that deal solely with discrimination by recipients of federal financial assistance.  Each of the four statutes listed in section 2000d–7 aims to prevent various types of discrimination by recipients of *any* type of federal financial assistance;  they are "antidiscrimination" statutes.  The Act, on the other hand, constitutes a comprehensive federal entitlement program that happens to include a provision prohibiting discrimination in disbursing these entitlements.  In other words, this statute prohibits discrimination in the disbursement of a *specific* type of federal financial assistance and cannot be deemed an "antidiscrimination" statute;  thus, the Act is not the kind of statute Congress was referring to in section 2000d–7.

Even if this were not so, our holding would not change.  In order for Congress to abrogate Eleventh Amendment immunity, it must make "its intention unmistakably clear in the language of the statute."  *Atascadero State Hosp.,* 473 U.S. at 242, 105 S.Ct. at 3147.  Congress may have done so for the four specifically enumerated statutes in section 2000d–7.  Given the two possible (and we think reasonable) interpretations of the last phrase of section 2000d–7, however, we conclude that Congress has not sufficiently expressed itself to support a finding of abrogation for claims brought under the Act.

Cronen also argues that the Act itself abrogates the states' Eleventh Amendment immunity, citing 7 U.S.C. §§ 2016(f), 2020(e), and 2023(b) (1988).  Basically, Cronen asserts that because these sections provide for a restoration of wrongfully withheld benefits, Congress must have meant to abrogate immunity, as these provisions otherwise would be rendered nugatory.  *See Gomez v. Illinois*

---

[4]Cronen does not allege that the state discriminated against him on the basis of race, sex, religion, national origin, or political beliefs.  Were we to hold that § 2000d–7 abrogates immunity under the Act, we would also have to decide whether it does so only for a discrimination claim or, alternatively, for any type of claim.  This further ambiguity lends additional support to our holding that Congress has not made its intention to abrogate immunity under the Act "unmistakably clear in the language of the statute."  *Atascadero State Hosp.,* 473 U.S. at 242, 105 S.Ct. at 3147.

*State Bd. of Educ.,* 811 F.2d 1030, 1036 (7th Cir.1987).

We find no merit in this argument. These provisions are not rendered meaningless absent abrogation, as actions for restoration of benefits can be brought in state court. *See Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (state courts must hear claims brought under federal law). The language of these provisions also fails to meet the *Atascadero* standard of unmistakable clarity. We therefore find no intent to abrogate immunity in the Act.

C.

Next, Cronen avers that the Eleventh Amendment does not bar his claim for retroactive benefits because these benefits would be paid entirely by the federal government. *See Bermudez v. Department of Agric.,* 490 F.2d 718 (D.C.Cir.), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973) (federal government liable for retroactive food stamp benefits); *see also Robinson v. Block,* 869 F.2d 202, 214 (3d Cir.1989). Had Cronen sued a state official in his official capacity, this argument might have merit.[5] In such a suit, a federal court may award prospective injunctive relief that has only an ancillary effect on the state treasury. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *see Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Here, of course, an injunction requiring an award of retroactive benefits would have no effect on the state treasury.

The Supreme Court, however, has never extended the *Ex parte Young* fiction to states themselves; the Court's prior decisions establish that a state *qua* state cannot be sued for damages *or* injunctive relief, absent waiver or abrogation. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 908. Consequently, the source of the damages is irrelevant when the suit is against the state itself or a state agency. We hold that the Eleventh Amendment bars Cronen's claims against Texas and the Texas Department of Human Services.

IV.

---

[5]Several circuits have accepted Cronen's argument. *See Robinson v. Block,* 869 F.2d 202 (3d Cir.1989); *Bennett v. White,* 865 F.2d 1395 (3d Cir.1989); *Foggs v. Block,* 722 F.2d 933 (1st Cir.1983); *Jordan v. Weaver,* 472 F.2d 985 (7th Cir.1973). *Contra Rothstein v. Wyman,* 467 F.2d 226 (2d Cir.1972).

We now address the claims against the individual defendants. At the outset, we note that Cronen's complaint does not specify whether his suit is brought against the individual defendants in their personal capacity, official capacity, or both. Cronen, however, in his "Additional Material Opposing Defendant's Motion to Dismiss," asserts that the suit is against the individuals in their personal capacity. Thus, we need not address the issues that would arise were the suit also brought against the defendants in their official capacity.

A.

The district court held that the individual defendants were entitled to qualified immunity against Cronen's claim for damages.[6] Executive officials who must necessarily exercise discretion in the scope of their duties are granted qualified immunity from damage suits. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Because qualified immunity constitutes an affirmative defense, the defendant must both plead and establish his entitlement to the defense. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). To establish such entitlement, he must show that the conduct in question occurred while he was acting "in his official capacity and within the scope of his discretionary authority." *Garris v. Rowland,* 678 F.2d 1264, 1271 (5th Cir.1982). The burden then shifts to the plaintiff "to rebut this "good faith' defense." *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982).

Although Cronen, in his pleadings, states that he is suing the individual defendants only in their personal capacity, he also says that they were acting in their official capacity, but he disputes that they were acting within the scope of their discretionary authority. As we understand Cronen's argument, the defendants allegedly acted outside their discretionary authority because they failed to follow or correctly apply the federal food stamp regulations as required by law; in other words, they had no discretion to act in a manner contrary to law.

We think Cronen misinterprets the meaning of discretionary authority, as his view would

---

[6]Cronen's suit seeks retroactive benefits as well as damages for "suffering." Damages for emotional suffering can be compensable under § 1983. *See Hamilton v. Rodgers,* 791 F.2d 439, 444–45 (5th Cir.1986); *Baskin v. Parker,* 602 F.2d 1205, 1209 (5th Cir.1979). Likewise, damages for physical suffering are compensatory in nature and therefore recoverable under § 1983. *See Baskin, id.*

emasculate the "good faith" prong of the qualified immunity defense. Under Cronen's approach, we would look to see whether the defendant acted contrary to law. If he had, he would be acting outside his discretionary authority and, thus, not entitled to immunity. The "good faith" prong would disappear from the analysis, and an official who acted wrongly would rarely be entitled to immunity. That result would conflict with the purpose of qualified immunity—allowing officials to exercise discretion without fear of liability when they make mistakes.

An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity. Here, the individual defendants handle appeals of food stamp applicants. In carrying out their duties, they necessarily must interpret the general language of statutes and regulations and apply them to concrete circumstances.

Cronen further contends that the defendants did not act in good faith. We must affirm the decision of the district court unless we find a material issue of fact as to whether the defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added). This is an objective, rather than subjective, test.

Cronen makes several claims regarding his food stamp benefits. He first calls attention to 7 C.F.R. § 273.9(d)(5)(i) (1992), which provides in part,

> ... Shelter costs shall include only the following: (A) Continuing charges for the shelter occupied by the household, including rent, mortgage, or other continuing charges leading to the ownership of the shelter such as loan repayments for the purchase of a mobile home, including interest on such payments.

Cronen claims that he is entitled to a deduction for rent on his storage space and post office box and that he can deduct the cost of the materials used to build his shacks and the transportation costs for these materials as "continuing charges leading to ownership."[7] Cronen also points to 7 C.F.R. § 273.10(c)(3)(i) (1992), which states in part, "Households, except destitute households, and PA [Public Assistance] households subject to a monthly reporting requirement, may elect to have income

---

[7]Cronen also claims he is entitled to a deduction for the cost of transportation between his property and the food stamp office. We agree with the defendants that there is no statutory or regulatory basis for such a deduction.

averaged." Cronen claims this provision allows him to elect income averaging and that the defendants prevented him from doing so.

We first consider whether the defendants violated any clearly established statutory or constitutional rights. States participating in the food stamp program must follow the federal regulations. 7 U.S.C.A. § 2014(b) (West 1988); 7 U.S.C.A. § 2020(e) (West 1988). If defendants refused to follow well-established federal regulations, they would violate clearly established rights.

As far as Cronen's claims for shelter cost deductions are concerned, we cannot say the defendants violated clearly established rights. The regulations do not specifically address Cronen's claimed deductions. The defendants simply applied the general language to Cronen's circumstances. Qualified immunity was designed to protect just this sort of judgment. We express no opinion on the reasonableness of defendant's interpretation but hold only that neither these regulations, nor any other authority, clearly establishes Cronen's right to the shelter cost deductions.

We reach a different conclusion when considering Cronen's claim that he was entitled to elect income averaging. The language of the federal regulation allows Cronen to elect income averaging unless he is destitute or receiving public assistance. We find nothing in the record indicating that either exception applies to Cronen. The reports of the various caseworkers indicate that Texas will not allow income averaging unless the claimant is self-employed or is eligible in the application month and ineligible the following month. The plain language of section 273.10(c)(3)(i) does not contemplate such restrictions, and Texas has not offered any legal basis for imposing these additional requirements. As an official colorably violates a clearly established right where he simply chooses not to follow binding federal regulations, Cronen has produced sufficient evidence to survive summary judgment.

Because Cronen has established the existence of a material issue of fact as to the violation of the clearly established right to income-average, we also must consider whether the defendants reasonably should have known of the right. That, too, is a factual issue inappropriate for resolution on summary judgment. There is evidence that the defendants did know, as Cronen provided photocopies of the pertinent regulations to them. Cronen claims the defendants told him they were

not complying with the regulations and that one defendant even said they did not have to comply therewith.  Accordingly, as Cronen has presented ample evidence to raise a material issue of fact as to whether the individual defendants are entitled to qualified immunity, we vacate the summary judgment in their favor as to this issue only.

## B.

The district court did not address Cronen's claim for injunctive relief.  Because we vacate and remand, we need not address this issue, which the district court should address on remand.

## V.

We AFFIRM the summary judgment in favor of Texas and the Texas Department of Human Services on the ground of Eleventh Amendment immunity.  Intimating no view as to the ultimate resolution of the merits, we VACATE the summary judgment in favor of the individual defendants as to the income-averaging issue only and REMAND for further proceedings on that issue and AFFIRM the summary judgment in all other respects.