United States Court of Appeals,

Fifth Circuit.

No. 93-3271.

Thomas A. MOORE, M.D., Plaintiff-Appellee,

v.

Brenda FELGER, et al., Defendants-Appellants.

April 29, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WOOD,[*] SMITH, and DUHÉ, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

This civil suit against several IRS agents stems from years of the recalcitrant conduct of a tax protester. Thomas A. Moore, a Louisiana psychiatrist, failed to pay his taxes for a number of years. As a result, he owed over one million dollars to the IRS, which he refused to deliver. The IRS requested patient records from Moore to determine if Moore's patients owed him for psychiatric services rendered, but Moore testified under oath that he kept no such records.

The IRS asked Moore for permission to search his house for property subject to levy in satisfaction of his tax liabilities, but Moore refused the IRS request. As a result, the IRS sought a Writ of Entry from Magistrate Judge Alma L. Chasez to search Moore's residence for property subject to levy, including furnishings and various types of jewelry, and to seize the property discovered.[1] The Magistrate Judge found that the IRS motion was supported by probable cause, and therefore granted the Writ of Entry.

IRS agents searched Moore's residence and premises pursuant to the Writ of Entry, finding a Rolls Royce and two other vehicles, thousands of dollars in cash, jewelry, furniture, and other

[*]Circuit Judge of the Seventh Circuit, sitting by designation.

[1]District courts can issue orders, upon *ex parte* application by the government, to enter private premises to seize property subject to federal tax liens. *See* 26 U.S.C. § 7402(a); *see also United States v. Campbell,* 761 F.2d 1181, 1186 (6th Cir.1985); *In re Carlson,* 580 F.2d 1365, 1373 (1978). Those orders, however, are subject to Fourth Amendment limitations. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977).

miscellaneous valuables. One of the pieces of furniture found was Moore's office desk, which was too large to remove for seizure without its disassembly. While preparing to disassemble the desk for seizure, an agent found over one-hundred file folders inside, each with a different person's name on the label. The agent also discovered numerous computer disks nearby. The agent, who was familiar with Moore's testimony that he kept no patient records, inferred that the files and disks might be patient records and therefore evidence of perjury.[2]

After notifying the other agents and consulting with an IRS attorney and an Assistant United States Attorney, the agents sought and received a warrant permitting seizure of the files and disks. After seizing the files and disks pursuant to the warrant, the IRS discovered 276 records, including 153 patient records and 34 invoices.

In light of the agents' discovery, Moore entered a pre-trial diversion program in which he accepted responsibility for having made false material declarations before the district court during contempt proceedings regarding his record keeping. At that time, Moore did not contend that the search was unconstitutional. Instead, Moore later sued the agents under the authority of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for twenty million dollars.

The agents moved for summary judgment based on qualified immunity, and Moore responded by claiming that several disputed factual issues existed. Moore contended that as a factual matter: (1) the agents did not discover the records inadvertently; (2) the Writ of Entry did not permit the agents to seize patient records; and (3) it was not immediately apparent that the records constituted evidence of perjury. The district court denied the agents' motion because of the second and third of these disputed factual issues.[3] The IRS agents now appeal from that denial, and Moore contends not only that the district court properly denied the motion for summary judgment, but also that we lack

---

[2]Whether the agent examined the contents of the files is discussed *infra.*

[3]The district court did not address the first issue, inadvertence, because two months after the seizure the Supreme Court eliminated the requirement that under the plain view doctrine discoveries must be inadvertent. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

jurisdiction to hear an appeal at this stage of the litigation.

## I. JURISDICTION

As we would have no authority to discuss other issues if this court lacked appellate jurisdiction, we must address that issue first. Moore contends that this court never can hear an appeal from a pre-trial order denying a qualified immunity defense when the facts of the case are contested. That argument is without merit.

As a general rule, pre-trial denials of qualified immunity defenses are appealable as final orders. 28 U.S.C. § 1291; *see also Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985). That rule does not lose force simply because this court considers the factual allegations composing the claim for relief. *Enlow v. Tishomingo County,* 962 F.2d 501, 508-09 (5th Cir.1992); *Mitchell,* 472 U.S. at 529 n. 10, 105 S.Ct. at 2817 n. 10. This court has exercised appellate jurisdiction when factual disputes relevant to the district court decision on the qualified immunity question were resolvable based on the record. *See, e.g., King v. Chide,* 974 F.2d 653, 656 (5th Cir.1992) ("We find the record before us adequate to the determination of the necessary fact questions" relevant to the district court decision denying qualified immunity). Were the rule otherwise, plaintiffs always could defeat appellate jurisdiction merely by asserting the existence of a disputed fact, effectively erasing 28 U.S.C. § 1291. Because we can resolve all relevant factual disputes in this case on the record, as will be discussed *infra,* appellate jurisdiction is proper.

## II. THE SEARCH

### A. Legal Background

The central issue in this appeal is whether the IRS agents could open Moore's desk without a search warrant specifically allowing them to do so. If opening Moore's desk was permissible, the subsequent seizure of files also was legal given that the IRS agents seized the files pursuant to a valid warrant that particularly described the files. The warrantless search of Moore's desk was proper if: (1) the agents had a right to be in Moore's house; (2) the files were in plain view; (3) the agents had a lawful right of access to the desk drawer in which the agents discovered the files; and (4) the incriminating nature of the files was immediately apparent. *See Horton v. California,* 496 U.S. 128,

136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990).

This appeal, however, is not about whether the patient records discovered in Moore's files should be suppressed in a criminal context—Moore did not challenge the constitutionality of the search when he was charged with contempt. Rather, this appeal is about whether the officers who discovered the files should be exposed to liability in a civil suit for their actions. The standard of conduct is less exacting for the latter than the former.

Federal officers performing discretionary acts are immune from suits for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons,* --- U.S. ----, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993). The plaintiff has the burden to come forward with evidence that creates a genuine issue as to whether the defendants' conduct was objectively unreasonable in light of clearly established law. *Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 939 (5th Cir.1992). Thus, if the agents either violated none of Moore's rights, or if those rights were not clearly established rights of which a reasonable person would have known, the agents are entitled to qualified immunity.

## B. The Plain View Doctrine

Regarding whether the agents had a right to be in Moore's house, the first question of *Horton,* 496 U.S. at 136-37, 110 S.Ct. at 2307-08, the district court answered this question affirmatively. The record in this case reveals that IRS agents legally entered Moore's house pursuant to a validly executed Writ of Entry, and Moore does not challenge that point. We therefore are satisfied that the district court found correctly regarding the first prong of *Horton.*

The next question under *Horton* is whether the files were in plain view. *Id.* Once the agents opened the desk, they could see the files clearly. The files were not obscured by other articles in the desk, but instead were hanging so that they were immediately apparent when the desk was opened. Thus, if the agents had a right to open the desk drawer, which is discussed *infra,* the contents were in fact in plain view. The other components of *Horton* merit closer scrutiny.

## 1. Lawful Right of Access

Moore contends that the Writ of Entry did not specify that the agents could seize patient

records.  He is correct, but the point is irrelevant.  Agents who have a lawful right of access to an area do not have to look the other way if they discover evidence of criminal conduct not specified in a search warrant.  *See Horton,* 496 U.S. at 136-37, 110 S.Ct. at 2307-08.  That is the central principle of the plain view doctrine.

Moore further contends that the Writ of Entry did not specify that the agents could seize the particular desk in which the agents discovered the files.  Although the Writ of Entry did not name each individual piece of furniture, doing so was impossible—Moore would not let the IRS agents into his house.  The Magistrate Judge found that probable cause existed to believe that Moore's house had furnishings subject to levy inside, a finding Moore does not contest.

Although the Writ of Entry listed several specific types of furniture, it specifically stated that it was not limited to those items, and desks certainly are furnishings.  *See American Heritage Dictionary* 540 (2d ed. 1982) ("**furnishings.**  The furniture, appliances, and other movable articles in a home or office.").  Given the size of the desk, it was reasonable to disassemble it for transportation from Moore's residence.  Implied in the Writ of Entry was the power to do what was necessary to effectuate the seizure, and disassembling the desk was necessary.  The agents therefore reasonably believed, and were correct in their belief, that they were entitled to open the desk.

Moore contends that the agent who opened the desk believed that the desk might contain patient records.  What the agent expected to find when he disassembled the desk, however, is irrelevant under *Horton.*[4]  As the Court noted in *Horton,* "[t]he fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in an area and duration by the terms of a warrant...."  *Id.* at 138, 110 S.Ct. at 2309.  Although the IRS agents were acting under the authority of the Writ of Entry rather than a warrant, as was at issue in *Horton,* the Writ of Entry allowed the agents to seize Moore's desk, satisfying the "lawful right of access" prong of *Horton.*

### 2. Immediately Apparent Evidence of Perjury

[4]The fact that *Horton* eliminated the inadvertence requirement of the plain view doctrine is discussed further *infra.*

Moore contends that evidence of perjury was not immediately apparent from looking at the file folders and disks.  First, he contends that he did not testify that he kept no patient records.  Although this is a "disputed fact," it cannot support the denial of summary judgment because it runs contrary to the evidence in the record.  The district court, when holding Moore in contempt, told him that "[y]ou testified that you have deliberately not kept records.  You may have done it inadvertently in the past and it got you into trouble, now you are doing it deliberately and there are no records...."  Thus, the district court was under the impression that Moore testified that he kept no patient records.

The district court formed that impression based on the following exchange.  The district court asked, "Dr. Moore, you don't have any administrative records, is that correct?"  Moore replied, "No, sir, but this is about to be corrected."  Based on Moore's statements, it was reasonable (and accurate) for the IRS agents to believe that Moore testified that he kept no patient records.  In fact, after the agents discovered records in Moore's desk (only 22 days later), Moore accepted responsibility for making false declarations before the district court regarding his lack of records.  Moore cannot now disavow his admission of responsibility to preserve the viability of his civil suit.[5]

Moore also argues that only the names on the file folders discovered by the agents were immediately apparent, and that evidence of perjury could only be ascertained by opening the folders.[6]  Given the particular facts of this case, that argument is without merit.  The IRS agent who discovered the files knew that Moore was a psychiatrist, and was familiar with Moore's testimony that he kept no patient records.  It hardly requires great mental acuity to ascertain that over one-hundred file folders labelled with different names in the office desk of a psychiatrist might constitute patient records, records that not only might be evidence of perjury, but also a collection asset to the IRS.  We are satisfied with the agent's affidavit that he did not open the files until after obtaining a search

_____

[5]Of course, there exists the corroborating proof of the 276 records.  Moore never claimed that he created those records in the twenty-two days preceding the search (a claim that would have stretched his credibility to the limits).

[6]This argument is not an "immediately apparent" argument as much as it is an argument that the records were not in plain view.

warrant, given that Moore presented no contrary evidence.[7]

This case is not like *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), in which an officer investigating a shooting moved a stereo from against the wall to check the serial number printed on its rear in order to determine if the stereo was stolen. The officer in *Hicks* had no probable cause to believe that the stereo was stolen, *id.* at 325-26, 107 S.Ct. at 1152-53, and the mere existence of a stereo does not immediately cause one to think "stolen." Here, however, the discovery of over one-hundred file folders individually labelled by name in the desk of a psychiatrist would immediately cause one to think "records." Knowing that Moore said there were no records, the immediately following thought is "perjury." The mental leap required to conclude that patient records may constitute evidence of perjury under these particular facts is no greater than the leap required to conclude that a bag of white powder seized in a gang's hideout may constitute evidence of possession of a controlled substance. *See United States v. Jolio Prandy-Binett,* 995 F.2d 1069, 1073 (D.C.Cir.1993).

### 3. Inadvertent Discovery

Moore contends that the IRS agents specifically searched for patient records rather than property for seizure. *Horton,* however, eliminated the inadvertent discovery requirement formerly associated with the plain view doctrine. 496 U.S. at 141-42, 110 S.Ct. at 2310-11. As such, Moore cannot claim that the agents violated his constitutional rights for the purposes of a *Bivens* action—the right to which Moore claims entitlement no longer exists. *Siegert v. Gilley,* 500 U.S. 226, ---, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (determining "whether the plaintiff has asserted a violation of a constitutional right at all" is a "necessary concomitant" to determining whether the defendants violated a clearly established right); *see also Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993)

_____

[7]Moore asserted generally that agents "went directly to [my] office and began immediately to search and seize [my] private books and papers," but Moore neither contended that an agent opened the folders in question, nor did he witness such conduct. Moore claimed that his attorney witnessed some of the conduct in question, but again does not state that the attorney saw anyone open the files and examine their contents. Additionally, no affidavit appears in the record from the attorney Moore claims witnessed the conduct. Moore did not meet his burden to come forward with evidence creating a genuine issue of material fact on this point. *See Cronen,* 977 F.2d at 939.

(officers are entitled to qualified immunity if they did not violate rights secured by the Constitution). The district court correctly omitted any analysis of inadvertent discovery.

Even under the law as it existed at the time of the search, the inadvertent discovery requirement was not clearly established for the purposes of qualified immunity analysis. *See Buckley,* --- U.S. at ----, 113 S.Ct. at 2613. Several courts had questioned the inadvertent discovery requirement before the search of Moore's residence took place, and only a plurality of the Supreme Court originally propounded the requirement. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Supreme Court had granted certiorari in *Horton* by the time of the search, further casting doubt on the continuing validity of the inadvertence requirement at the time. Thus, even if a defunct constitutional right could support a *Bivens* action, the agents would be entitled to qualified immunity because the right was not clearly established at the time of the search.

### III. CONCLUSION

This court has jurisdiction to decide the issues in this case. Moore has raised no factual issues which cast doubt on the constitutionality of the IRS agents' actions. The agents entered Moore's residence pursuant to a valid Writ of Entry,[8] discovered Moore's files in plain view while executing the Writ of Entry, and seized the contents of the files pursuant to a valid warrant. The district court therefore should have granted summary judgment in favor of the defendants in Moore's civil action based on qualified immunity.

The order denying summary judgment is REVERSED, and judgment is RENDERED in favor of the defendants.

---

[8]One agent named in Moore's suit, MacDuffie Herrod, was on leave during the events in question, and Moore agrees that summary judgment should have been granted as to defendant Herrod. That conclusion, however, loses importance given that the district court should have granted qualified immunity in favor of all of the IRS agents.