# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2021

Lyle W. Cayce
Clerk

No. 20-20248

Christopher Sullivan,

*Plaintiff—Appellant*,

*versus*

Texas A&M University System,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4586

Before Haynes, Higginson, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

Christopher Sullivan sued Texas A&M University for money damages. The district court held that sovereign immunity barred the suit. We affirm.

I.

Sullivan was diagnosed with atrial fibrillation in April 2012. Shortly thereafter, he began training at the Texas A&M University Police Department. Sullivan sought and received treatment for his condition, and the University eventually offered him employment in data entry and filing.

No. 20-20248

Sullivan received a series of poor performance evaluations. The police department terminated him in November 2017. Sullivan then filed disability-discrimination and retaliation claims with the Equal Employment Opportunity Commission. The EEOC issued him a Right to Sue letter.

Sullivan timely filed suit in the United States District Court for the Southern District of Texas. He alleged employment-discrimination claims under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the Texas Commission on Human Rights Act, TEX. LAB. CODE §§ 21.001 *et seq.* ("TCHRA"). He further alleged unlawful retaliation in violation of both Title I of the ADA and the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). The suit sought compensatory damages, punitive damages, and attorney's fees.

The district court dismissed all of Sullivan's claims as barred by sovereign immunity. That dismissal was without prejudice. *See Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) (holding sovereign-immunity-based dismissals are without prejudice); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2373, at 756–57 (3d ed. 2008) (explaining that because dismissal for lack of jurisdiction does not reach the merits, the claim "must be considered to have been dismissed without prejudice"). Sullivan timely appealed.

## II.

Texas A&M is an agency of the State of Texas, so a suit against the former is a suit against the latter. *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). That's a problem for Sullivan because the Constitution affords States sovereign immunity against suit. *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). And that sovereign immunity is a jurisdictional roadblock. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996).

No. 20-20248

To establish jurisdiction, Sullivan must invoke one of two exceptions to sovereign immunity. First, he could argue Congress validly abrogated the State's sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Second, he could argue the State knowingly and plainly waived its sovereign immunity and consented to suit. *See ibid.* Neither exception applies here.

## A.

Let's start with abrogation. The ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. This provision at least purports to abrogate the States' sovereign immunity.[1] But the Supreme Court has held that Congress exceeded its constitutional abrogation authority in enacting § 12202. *Bd. of Trs. of Univ. of Ala. v. Garrett*,

---

[1] The ADA attempts to abrogate the States' immunity "under the eleventh amendment." 42 U.S.C. § 12202. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. By its terms, the Amendment does not apply to the situation in today's appeal—where a citizen sues his own State (or an agency of that State). Still, the Supreme Court has often used "Eleventh Amendment immunity" as a synonym for the States' broader constitutional sovereign immunity. *See, e.g.*, *Seminole Tribe*, 517 U.S. 44 (generally using "state sovereign immunity" and "Eleventh Amendment immunity" interchangeably); *cf. id.* at 54 (explaining that the Court understood the Eleventh Amendment to "confirm[]" "the presupposition" that "each State is a sovereign entity in our federal system" (quotation omitted)); *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) ("Although the terms of [the Eleventh] Amendment address only . . . specific provisions . . . , the natural inference from its speedy adoption is that the Constitution was understood . . . to preserve the States' traditional immunity from private suits." (quotation omitted)). The Supreme Court has likewise read "eleventh amendment immunity" in § 12202 as a synonym for the States' broader constitutional immunity. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001) (holding § 12202 constitutes an "unequivocal[]" congressional attempt to abrogate).

3

531 U.S. 356, 374 (2001). Accordingly, Sullivan cannot rely on abrogation to overcome Texas's sovereign immunity from his claim under Title I of the ADA.

The same is true of Sullivan's claim under the FMLA. That statute, like the ADA, purports to make States amenable to suit. *See* 29 U.S.C. § 2617(a)(2) (creating a cause of action for damages "against any employer (including a public agency)"); *id.* §§ 203(x), 2611(4)(A)(iii) (defining "public agency" to include both "the government of a State or political subdivision thereof" and "any agency of . . . a State, or a political subdivision of a State"). With respect to the FMLA's *family*-care provision, 29 U.S.C. § 2612(a)(1)(C), Congress acted constitutionally in making the States amenable to suit. *See Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003). But Sullivan did not sue under the family-care provision; he sued under the FMLA's *self*-care provision, 29 U.S.C. § 2612(a)(1)(D). And with respect to the latter, Congress exceeded its constitutional powers in trying to make States amenable to suit. *See Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 43–44 (2012). Accordingly, Sullivan cannot rely on abrogation to overcome Texas's sovereign immunity from his FMLA claim.

## B.

That means Sullivan can overcome sovereign immunity only by showing that Texas knowingly waived its immunity—that is, consented—to his suit. Sullivan invokes both federal and state law. Neither helps him.

## 1.

First, the State of Texas did not waive its immunity to suit by accepting financial assistance under federal law. It's true that States can, under certain circumstances, waive their sovereign immunity by accepting federal funds and then violating "section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination

Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). Thus, for example, we have held that a State is amenable to suit where it operates a program in violation of the Rehabilitation Act and accepts federal financial assistance for that state program. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 288–89 (5th Cir. 2005) (en banc).

But Sullivan did not sue under the Rehabilitation Act. He sued under Title I of the ADA and the FMLA. Unlike the Rehabilitation Act, the ADA and the FMLA are not among the statutes mentioned in § 2000d-7(a)(1). So Sullivan's argument turns on whether the ADA or the FMLA fall within § 2000d-7(a)(1)'s residual clause—that is, whether the ADA or the FMLA constitutes "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

Our precedent forecloses Sullivan's argument. In *Cronen v. Texas Department of Human Services*, 977 F.2d 934 (5th Cir. 1992), we addressed the scope of § 2000d-7(a)(1)'s residual clause. Like Sullivan, the plaintiff in that case argued the residual clause covered "any federal statute prohibiting discrimination and involving the distribution of any federal financial assistance." *Id.* at 937. We thought another interpretation was more persuasive—the residual clause reaches "only . . . statutes that deal *solely* with discrimination by recipients of federal financial assistance." *Ibid.* (emphasis added); *accord Sullivan v. Univ. of Tex. Health Sci. Ctr. Houston Dental Branch*, 217 F. App'x 391, 395 (5th Cir. 2007) (per curiam) (finding the ADEA does not fall within § 2000d-7(a)(1)'s residual clause because the "ADEA prohibits age discrimination by 'employers,' not by those who receive federal financial assistance").

That narrower interpretation accords with § 2000d-7(a)(1)'s text. The listed statutes preceding the residual clause all limit their substantive antidiscrimination provisions to recipients of federal funding. *See* 29 U.S.C. § 794(a) (prohibiting discrimination on the basis of disability in "any program or activity receiving Federal financial assistance"); 20 U.S.C. § 1681(a) (prohibiting discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance"); 42 U.S.C. § 6102 (prohibiting discrimination on the basis of age in "any program or activity receiving Federal financial assistance"); 42 U.S.C. § 2000d (prohibiting discrimination on the basis of race, color, or national origin in "any program or activity receiving Federal financial assistance").

The residual clause then sweeps in "any other Federal statute" that also prohibits "discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). So the listed statutes define a set—"statutes that deal *solely* with discrimination by recipients of federal financial assistance." *Cronen*, 977 F.2d at 937 (emphasis added). And a plaintiff seeking to invoke the residual clause must show his cause of action arises under a statute within that defined set. *See Yates v. United States*, 574 U.S. 528, 545 (2015) ("Where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quotation omitted)). If Congress wanted the residual clause to sweep as broadly as Sullivan's interpretation, it could have written the statute to cover "any other Federal statute prohibiting discrimination." It didn't, and we refuse to render meaningless the words Congress *did* choose. *See Duncan v. Walker*, 533 U.S.

No. 20-20248

167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (quotation omitted)).[2]

Applying these rules here, Title I of the ADA does not fall within the residual clause of § 2000d-7(a)(1). Title I's substantive provisions prohibit discrimination by a wide range of entities, not just those receiving federal funding. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination on the basis of disability by a "covered entity"); *id.* § 12111(2) (defining "covered entity" to mean "an employer, employment agency, labor organization, or joint labor-management committee"). It is thus not a "statute[] that deal[s] solely with discrimination by recipients of federal financial assistance." *Cronen*, 977 F.2d at 937. We therefore hold that Title I falls outside the ambit of the residual clause. In reaching that conclusion, we join at least one of our sister

---

[2] Limiting the sweep of the residual clause to "statutes that deal solely with discrimination by recipients of federal financial assistance," *Cronen*, 977 F.2d at 937, also reflects the constitutional *source* of waiver conditions in federal funding programs. Pursuant to the General Welfare Clause, Congress may impose obligations on the States as a condition of their receiving federal funding. *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987); U.S. CONST. art. I, § 8, cl. 1 ("The Congress shall have Power . . . to pay Debts and provide for the common Defence and general Welfare of the United States . . . ."). Thus, the "[S]tate may waive its immunity by voluntarily participating in federal spending programs when Congress expresses a clear intent to condition participation in the programs on a State's consent to waive its constitutional immunity." *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000) (quotation omitted). So, for example, we have held that Title IX "operates much in the nature of a contract"—in return for federal funds the State "consent[s] to be sued in federal court for an alleged breach of the promise not to discriminate." *Litman v. George Mason Univ.*, 186 F.3d 544, 551–52 (5th Cir. 1999) (quotation omitted). By contrast, where Congress enacts a statute pursuant to another grant of power, it does not offer States a contractual exchange of funding for a waiver. *See, e.g.*, *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d at 1170 (10th Cir. 2015) (finding no waiver of sovereign immunity for ADA claims in the Rehabilitation Act's residual clause, in part because "the statutes were enacted . . . under wholly different provisions of the Constitution"). Our interpretation of § 2000d-7 reflects this dichotomy—only statutes enacted pursuant to the General Welfare Clause fall within the contractual waiver offered in § 2000d-7(a)(1).

circuits and a number of lower courts. *See Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1171 (10th Cir. 2015); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 & n.6 (M.D. La. 2012); *Panzardi-Santiago v. Univ. of P.R.*, 200 F. Supp. 2d 1, 9 (D.P.R. 2002).[3]

Like the ADA, the FMLA's substantive provisions cover a far broader range of entities than "recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). Under the FMLA, an "employer" may not deny leave to an "eligible employee" for covered medical needs. *See* 29 U.S.C. § 2612(a)(1) (leave requirements); *id.* § 2611(2)(A) (defining "eligible employee"); *id.* § 2611(4)(A) (defining "employer"). The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." *Id.* § 2611(4)(A)(i). And the statute's anti-retaliation provisions are equally broad—they make it unlawful for "any employer" to "interfere with, restrain, or deny the exercise of" substantive FMLA rights. *Id.* § 2615(a)(1). Because the FMLA is not a statute that "deal[s] solely with discrimination by recipients of federal financial assistance," *Cronen*, 977 F.2d at 937, it does not fall within the ambit of § 2000d-7(a)(1)'s residual clause.

Accordingly, Sullivan has failed to show that the State waived its sovereign immunity under § 2000d-7(a)(1).

---

[3] Sullivan also sues under Title V of the ADA, which prohibits certain acts of retaliation. But we recently held: "Title V itself does not abrogate a [S]tate's sovereign immunity. Instead, a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular [S]tate." *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020) (quotation omitted). Because Sullivan's underlying Title I claim is barred by sovereign immunity, so too is his Title V claim.

No. 20-20248

2.

Finally, Sullivan points to state law to find Texas's waiver to his suit. Again, Sullivan fails. In the TCHRA, the State of Texas waives its immunity to suit in state courts, but it "does not expressly waive sovereign immunity in *federal* court." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *see Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306–07 (1990).

AFFIRMED.