**Reversed and Rendered and Opinion filed March 19, 2026**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-24-00073-CV

---

**TEXAS DEPARTMENT OF INSURANCE, Appellant**

**V.**

**SOM THOMAS, Appellee**

---

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-003365**

---

## OPINION

Som Thomas sued his former employer, the Texas Department of Insurance (TDI), and three of his former supervisors. Thomas alleges that he was terminated because of a disability, in retaliation for requesting disability accommodations, and in retaliation for filing employment discrimination complaints. He alleges causes of action under Chapter 21 of the Labor Code, Title I of the Americans with Disability Act (ADA), and the self-care provision of the Family and Medical Leave Act (FMLA). The district court dismissed the claims against the individual defendants

but not TDI. We reverse and render judgment for TDI.

## BACKGROUND

Thomas worked for TDI as a financial examiner for seventeen-and-a-half years. He took leave from May 26, 2020 to July 6, 2020, to undergo surgery for prostate cancer. On his return to work, he allegedly "express[ed] his needs for certain reasonable accommodations" because of his "medical condition."[1] Specifically, he requested to work on "less stressful and strenuous projects" and to be exempt from training newly hired examiners.

Thomas pleaded that his direct supervisor, Gigi Paul, assigned him "one of the largest and most complex projects" in the office and also insisted that he help with training. Thomas informed Paul and Chief Examiner Shawn Frederick that the new project would require him to work more hours than his condition permitted, and in any event could not be completed by the deadline without more resources. Paul and Frederick kept Thomas on the project and insisted that he work on it with minimal assistance from others. Paul also required him to participate in weekly regulatory calls.

Thomas sought help from TDI's Department of Human Resources and submitted a letter from his physician that he could not work an eight-hour day. Human Resources informed him that he could work a six-hour day with intermittent breaks. However, Paul and Frederick made no corresponding adjustments to his work assignments or deadlines.

On August 2, 2021, Paul sent Thomas a memorandum reprimanding him for his "resistance to meeting with regulators," his "refusal to train newer staff

---

[1] We take Thomas's allegations as true at this stage. *In re UMTH Gen. Servs., L.P.*, 725 S.W.3d 424, 428 (Tex. 2025) ("In assessing a plea to the jurisdiction, we construe a plaintiff's pleadings liberally, taking the facts alleged as true.").

members," and his "lack of professionalism" for raising his voice during a meeting with Paul. The following month, Frederick directed Thomas by email to "not engage in unproductive dialogue with [Paul]." Thomas alleges that this was in response to his requests for an explanation of "what was expected of him" during the regulatory calls. Thomas then submitted a complaint to Deputy Commissioner Jaime Walker, who "ratified" the decisions of Paul and Frederick.

Thomas stopped coming to work on September 20, 2021.[2] On September 22, the director of the human resources department emailed Thomas about his absence. In his response, Thomas referred to an email between his attorney and TDI assistant general counsel Robert Rucker "stating that [he] had been constructively discharged."[3] The following day, Rucker emailed Thomas through his attorney that Thomas would be terminated if he did not return to work or resign by September 27, 2021. Thomas did neither, and Paul fired him by memo dated September 27, 2021.

Thomas sued TDI, Walker, Frederick, and Paul under Title I of the ADA, the FMLA, and Chapter 21 of the Labor Code. TDI and the individual defendants filed a plea to the jurisdiction, with evidence, asserting that immunity bars Thomas' suit. Thomas filed a response and attached his affidavit. The trial court denied relief as to TDI. TDI timely appealed.[4]

## APPELLATE JURISDICTION

We start by determining our own jurisdiction. No party has questioned this Court's jurisdiction, but we have an "affirmative obligation 'to ascertain that subject

---

[2]     We take the following sequence of events from a memorandum Paul sent to Thomas concerning his termination.

[3]     The email exchange is not in the record.

[4]     TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

matter jurisdiction exists.'"[5]

The Texas Constitution provides each court of appeals with jurisdiction that is "co-extensive with the limits of [its] . . . district[]" and that "extend[s] to all cases" over which the district and county courts have jurisdiction "under such restrictions and regulations as may be prescribed by law."[6] The Legislature granted this Court "exclusive intermediate appellate jurisdiction" over three categories of "matters arising out of or related to a civil case": (1) those brought by or against the State, with enumerated exceptions; (2) those involving a challenge to the constitutionality or validity of a state statute or rule and in which the attorney general is a party; and (3) "any other matter as provided by law."[7] This case—in part—falls under the first category of this Court's jurisdiction: TDI is a state agency,[8] and none of the statutory exceptions apply to claims under the FMLA or the ADA.[9] However, the statute expressly excludes "a proceeding brought under Chapter 21, Labor Code" from this Court's exclusive jurisdiction.[10]

That exclusion does not deprive us of the power to decide the claim. Section 22.220(a) of the Government Code provides that each court of appeals has jurisdiction "of all civil cases within its district."[11] This Court's district "is composed of all counties in this state,"[12] so we have "jurisdiction over civil cases appealed from

---

[5]     *Univ. of Tex. Rio Grande Valley v. Oteka*, 715 S.W.3d 734, 744 n. 49 (Tex. 2025) (quoting *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013)).

[6]     TEX. CONST. art. V, § 6(a).

[7]     TEX. GOV'T CODE § 22.220(d).

[8]     TEX. LABOR CODE § 402.001(a) (referring to TDI as a "state agency").

[9]     *See generally* TEX. GOV'T CODE § 22.220(d).

[10]    *Id.* § 22.220(d)(1)(M).

[11]    *Id.* §22.220(a)

[12]    *Id.* § 22.201(p).

4

every county."[13] A statute commands that appeals "falling outside" our exclusive jurisdiction must be transferred to another court of appeals, but that command does not mean we lack jurisdiction over those cases.[14] On the contrary, the power to transfer means that we possess jurisdiction but "should not exercise it in deference to another court with concurrent jurisdiction."[15]

TDI argues in a letter brief that we should exercise our general jurisdiction to decide every case that includes one matter within our exclusive jurisdiction. TDI points out that even though the Legislature made our exclusive jurisdiction dependent on "*matters arising out of or related to* a civil case," it gave us general jurisdiction over "all civil cases" within our district.[16] The Legislature also prohibited the Supreme Court from transferring any "case or proceeding"—not "matter"—from this Court that was properly filed here.[17]

We generally would not decide an appeal if all claims fall outside of our exclusive jurisdiction.[18] But we unquestionably have jurisdiction over the federal FMLA and ADA claims, and the Chapter 21 claim arises from the same facts and involves parallel questions of law.[19] We alone can decide the two federal claims as we have exclusive jurisdiction, and the rules of civil procedure have long *required*

---

[13]     *Kelley v. Homminga*, 706 S.W.3d 829, 832 (Tex. 2025).

[14]     *Id.* at 833 (citing TEX. GOV'T CODE § 73.001(c)).

[15]     *Id.*

[16]     *See* TEX. GOV'T CODE § 22.220(a), (d).

[17]     *Id.* § 73.001(b).

[18]     *Kelley*, 706 S.W.3d at 833 (inappropriately-filed cases "must be transferred"). *But cf. id.* at 832 (This Court's "expansive jurisdiction ensures that … cases can be transferred into the Fifteenth Court to equalize its docket.").

[19]     In contrast, *Kelley* involved two consolidated appeals that were entirely outside our exclusive intermediate jurisdiction. *See id.* at 830 ("In each case, the defendants noticed their appeal to the Fifteenth Court while conceding that the appeal is not within the Fifteenth Court's exclusive jurisdiction.").

or *allowed* claims involving the same transaction or occurrence to be joined in one proceeding.[20] We do not reach—and therefore express no opinion on—whether we have jurisdiction of claims arising from *unrelated* transactions or occurrences that are tacked onto matters within our exclusive jurisdiction. But we do not read our jurisdictional statute to require separate appeals in separate courts of appeals arising from a single occurrence.

## DISCUSSION

Having concluded that we have jurisdiction, we turn to whether the trial court decided its own jurisdiction correctly.

TDI is a state agency[21] and is thus immune from suit unless that immunity is expressly waived by the Legislature or validly abrogated by Congress.[22] An agency may assert immunity in a plea to the jurisdiction,[23] which "may challenge the pleadings, the existence of jurisdictional facts, or both."[24] When the issue is pleading sufficiency, we determine if the "pleadings, construed in favor of the [pleader], allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case."[25] But when the defendant challenges the existence of jurisdictional facts, we

---

[20]     *See* Tex. R. Civ. P. 97(a) (requiring compulsory counterclaim in same proceeding if it is "within the jurisdiction of the court, not the subject of a pending action, … [and] it arises out of the transaction or occurrence" as the pending claim); *id*. R. 38(a) (limiting joinder of third-party claims to those "arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim"); *id*. R. 40(a) (permitting joinder of plaintiffs or defendants involving claims asserted by or against them "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action").

[21]     Tex. Labor Code § 402.001(a).

[22]     *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010).

[23]     *Tex. Health & Human Servs. Comm'n v. Pope*, 674 S.W.3d 273, 280 (Tex. 2023).

[24]     *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 19 (Tex. 2024).

[25]     *Id.*

must "must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim."[26] The analysis then "mirrors that of a traditional summary judgment."[27] We review a trial court's ruling on a jurisdictional plea de novo.[28]

**Federal Claims**

We start with Thomas's federal claims. TDI argues that Thomas failed to allege a valid waiver of immunity for his claims under the FMLA or the ADA.[29]

The FMLA guarantees eligible employees twelve workweeks of leave in any twelve-month period for various reasons.[30] Employers may not interfere with an employee's exercise of rights under the statute or discriminate against an employee who exercises those rights.[31] Thomas invokes the self-care provision, which entitles an employee to take leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[32] Both the United States Supreme Court and the Supreme Court of Texas have held that Congress did not validly abrogate the States' sovereign immunity from suit based on the self-care provision.[33]

---

[26] *Pope*, 674 S.W.3d at 281.

[27] *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)).

[28] *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023).

[29] Thomas does not argue that the Legislature has waived immunity from suit under either federal law.

[30] 29 U.S.C. § 2612(a).

[31] *Id.* § 2615(a)(1), (2).

[32] *Id.* § 2612(a)(1)(D).

[33] *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 38 (2012) ("Standing alone, the self-care provision is not a valid abrogation of the States' immunity from suit."); *Herrera*, 322 S.W.3d at 201 ("Congress exceeded its § 5 abrogation authority when it subjected the States to

Thomas's ADA claim meets the same fate. Title I of the ADA prohibits employers from discriminating against disabled individuals in the terms and conditions of employment.[34] The United States Supreme Court has held that Congress did not validly abrogate immunity for private suits under Title I.[35]

The trial court erred by denying the plea to the jurisdiction as to these claims.

**Chapter 21**

Under Chapter 21 of the Labor Code, an employer may not discriminate against an individual "because of" certain characteristics, including disability,[36] and must reasonably accommodate the physical or mental limitations of disabled employees who are "otherwise qualified" for the job.[37] The statute also prohibits retaliating against an employee who—as here—files a complaint of discrimination.[38] Chapter 21 waives sovereign immunity, "but only if the plaintiff alleges facts that would establish that the state agency violated [Chapter 21] and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation."[39]

In the absence of direct evidence of discrimination, we employ the *McDonnell Douglas* burden-shifting framework.[40] The employee has the initial burden to plead

---

private-damages suits under the FMLA's self-care provision."); *see also Meeks v. Tex. Dep't of Aging & Disability Servs.,* No. 1:16-CV-1135-RP, 2017 WL 8182825, at *3 (W.D. Tex. July 19, 2017) (explaining *Coleman* applies equally to retaliation and interference claims).

34      42 U.S.C. § 12112(a)–(b).

35      *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 & n.9 (2001); *see Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 595–96 (5th Cir. 2021).

36      TEX. LABOR CODE § 21.051(1).

37      *Id.* § 21.128(a).

38      *Id.* § 21.055(3).

39      *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500, 504–05 (Tex. 2024).

40      *Id.* at 505 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)).

facts raising a prima facie case of discrimination.[41] If the employee is successful, a presumption of discrimination arises that is sufficient to support the trial court's exercise of jurisdiction.[42] The employer can rebut the presumption by presenting evidence of a legitimate, nondiscriminatory reason for the disputed action.[43] Once rebutted, the presumption shifts back to the plaintiff to present evidence that the employer's stated reason is pretextual.[44]

*Affidavit*

Thomas relies heavily on his affidavit, which was attached to his response in the trial court. TDI argues that the trial court should not have considered the affidavit because courts should not consider facts outside the pleadings in determining jurisdiction. But TDI's plea is explicitly a challenge to the existence of jurisdictional facts, and deciding that type of plea *requires* considering evidence outside the pleadings when necessary to resolve the jurisdictional issue.[45]

This affidavit, however, proves little. Except for the issue whether Thomas submitted an internal appeal of his termination, which we discuss below, the affidavit restates the allegations contained in his pleading, sometimes verbatim. "[A]n affidavit that is nothing more than a sworn repetition of allegations in the pleadings … has no probative force, as the statements are no more than conclusions or a mere surmise or suspicion."[46]

---

[41]    *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018).

[42]    *Id*.

[43]    *Id.*

[44]    *Id.*

[45]    *See, e.g., Pope*, 674 S.W.3d at 281. Even on a challenge to the sufficiency of the pleadings, courts must consider relevant jurisdictional evidence. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

[46]    *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 183 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333

*Disability Discrimination*

An employer violates Chapter 21 "if because of … disability … the employer … discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment."[47] Discrimination "because of" disability means "discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job."[48] To establish a prima facie case of disability discrimination, a plaintiff must show that he (1) has a disability; (2) is otherwise "qualified" for the job; and (3) suffered an adverse employment decision because of his disability.[49]

First, TDI argues that Thomas failed to allege a disability. Chapter 21 defines a disability as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment."[50] TDI contends that Thomas did not plead that his cancer diagnosis substantially limited any life activity, that there was a record of such impairment, or that anyone at TDI regarded him as disabled. But Chapter 21 defines "major life activity" to include "working,"[51] and Thomas pleaded that, after returning to work, he "express[ed] his needs for certain reasonable medical

---

S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied))); *see Hobson v. Francis*, 2019 WL 2635562, at *11 (Tex. App.—Fort Worth June 27, 2019, no pet.) ("Hobson's affidavit" was not probative evidence because it "simply rehashed his petition's allegations in large part.").

[47]     TEX. LABOR CODE § 21.051(1).

[48]     *Id.* § 21.105.

[49]     *See Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Tex. Dep't of Fam. & Protective Servs. v. Howard*, 429 S.W.3d 782, 787 (Tex. App.—Dallas 2014, pet. denied).

[50]     TEX. LABOR CODE § 21.002(6).

[51]     *Id.* § 21.002(11-a).

accommodations of his medical condition," including "work[ing] on less stressful and strenuous projects" and not training new hires. Liberally construed, his pleadings sufficiently allege a disability.[52]

Second, TDI argues that Thomas did not plead that he was terminated "because of" his disability.[53] The causation standard at this stage "is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action."[54] Thomas pleaded that TDI fired him "because of [his] disability" but did not cite to any facts. On appeal, Thomas notes that he pleaded that his supervisors were well aware of his condition and terminated him shortly after he started asking for accommodations. Although merely pleading the elements of a theory is usually not enough to give notice of the underlying facts,[55] we liberally construe Thomas's pleadings at this stage.[56] Liberally construed, his pleadings are sufficient to allege a causal connection between his disability and the termination.

---

[52] Thomas pleaded a separate claim for "failure to engage in required interactive process" under Chapter 21. When an employee informs his employer of a disability and resulting limitations and suggests a reasonable accommodation, "the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Hagood v. Cnty. of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.). But failure to engage in the interactive process is not a separate statutory violation. *Harmon v. Tex. S. Univ.*, 672 S.W.3d 684, 694 n.3 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

[53] TDI acknowledges that the written reprimand and Federick's email *are* related to his requests for accommodations but contends that neither event is an adverse employment action. Generally, adverse employment actions "involve hiring, granting leave, discharging, promoting, and compensating employees," and not "disciplinary filings, supervisor's reprimands, poor performance reviews, hostility from fellow employees, verbal threats to fire, criticism of the employee's work, or negative employment evaluations." *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We agree with TDI that neither the memo nor the email qualify as adverse employment actions.

[54] *Alamo Heights*, 544 S.W.3d at 782.

[55] *See In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 662 (Tex. 2023) ("The pleading of a legal theory, without more, does not provide notice of the facts that could be pleaded to support that theory.").

[56] *See Self*, 690 S.W.3d at 19.

The next question is whether TDI presented evidence of a non-discriminatory reason for the termination. The evidence attached to TDI's plea includes Paul's September 27, 2021, letter informing Thomas of his termination. The letter reproduces portions of TDI's employment manual stating that employees who fail to report to work or inform their supervisor of their absence "may be presumed to have abandoned his or her job" and will be removed from the payroll. The letter then says that Thomas had not reported to work since September 21, 2021, and never informed anyone or requested permission. Thomas does not dispute that he violated these provisions of the TDI employment manual. Accordingly, TDI carried its burden to present evidence of a legitimate, nondiscriminatory reason for the termination.[57]

Thomas responds that there is a fact issue whether his complaints of discrimination were the real reasons for his termination. He contends that Paul's memo "undeniably states" that the reason for his absence was that the actions of his supervisors constructively terminated him. But that is not what the memo says. The memo contains a timeline of events starting on September 21. The next day, TDI's director of Human Resources emailed Thomas that TDI was concerned about his absence from work. Thomas responded with an email that "referenced a communication between [his] attorney, Mark Downey, and Robert Rucker, TDI Assistant General Counsel, stating that [Thomas] had been constructively discharged." This does not say that *Rucker* ever said so, or if this was merely a conclusory allegation by Thomas's own attorney. The context supports the latter, since Rucker replied the next day that Thomas "*would be* terminated" if he did not report to work within two business days.

It is difficult to know what to make of this argument because constructive

---

[57]    *See Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 838 (E.D. Tex. 2009) (unrebutted evidence that employee violated company absenteeism policy established nondiscriminatory pretext for termination).

discharge is a distinct type of discrimination claim. It requires proof that an employee resigned and the employer "made the working conditions so intolerable that a reasonable person would feel compelled to resign."[58] Subjecting an employee to such working conditions is "functionally the same as an actual termination."[59] Constructive discharge is not available when an employer formally terminates an employee, which is what Thomas alleges happened to him.[60]

Thomas also argues that TDI's disregard of his internal appeal of the termination is some evidence that his complaints were the true reason for his termination. Thomas argues that he "submitted an appeal of the termination decision" on September 29, 2021, and that TDI took no action despite the existence of a "clear procedure for processing appeals of this nature." To support these arguments, Thomas relies on his affidavit, Paul's memo, and paperwork TDI sent him after separation. The affidavit restates the allegation that he submitted an appeal that was ignored by TDI, but gives no further details. Paul's memo states that "filing a complaint with TDI regarding your termination" is an option and refers Thomas to procedures outlined in the employee manual, the relevant portions of which are not in the record. The separation paperwork is titled "Reasons for Separation" and gives Thomas's name, job title, contact information, and his self-reported reasons for separating from the agency.[61] Nothing in that document mentions filing an appeal. Because none of the documents that Thomas relies on show that he actually filed an

---

[58] *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 884 n.26 (Tex. 2024) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010)).

[59] *Gardner v. Abbott*, 414 S.W.3d 369, 381 (Tex. App.—Austin 2013, no pet.) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)).

[60] *See Fossil Grp.*, 691 S.W.3d at 883–84 (treating constructive-discharge and actual-termination claims as distinct); *Waffle House*, 313 S.W.3d at 805–06 (same).

[61] He wrote: "Retaliatory approach from Gigi Paul and Shawn Frederick while on FMLA and the unresponsive attitude from Senior Management on my complaints."

appeal, he cannot raise a fact issue on pretext.

*Failure to Accommodate*

Thomas' failure-to-accommodate claim fares no better. Chapter 21 requires employers to accommodate a known physical or mental limitation "of an otherwise qualified individual with a disability" who is an employee.[62] To assert a prima facie case of failure to accommodate, Thomas must show that: (1) he had a disability; (2) TDI had notice of his disability; (3) he could perform the "essential functions" of his position with "reasonable accommodations"; and (4) TDI refused to make such accommodations.[63]

First, TDI argues that Thomas never alleges that he was disabled. We disagree, for the reasons we outlined in our discussion of his discrimination claim. But we agree with TDI that Thomas' request to be exempt from his responsibility to train new examiners was not reasonable. An accommodation is reasonable if it would enable the employee to perform the job's essential functions.[64] "A function is 'essential' if it bears more than a marginal relationship to the employee's job."[65] In

---

[62]     Tex. Labor Code § 21.128(a).

[63]     *El Paso Cnty. Water Improvement Dist. No. 1 v. Trevizo*, 697 S.W.3d 259, 276 (Tex. App.—El Paso 2023, no pet.).

Our sister courts are divided on whether the *McDonnell Douglas* burden shifting framework applies to reasonable accommodations claims under Chapter 21. *Compare Donaldson*, 495 S.W.3d at 439 ("We note that the McDonnell Douglas burden-shifting framework is not applicable to a reasonable accommodation claim."), *with Tex. State Tech. Coll. Sys. v. Donavan*, 2025 WL 1403562, at *14 (Tex. App.—Beaumont May 15, 2025, pet. denied) (applying McDonnell Douglas). Until the Supreme Court of Texas addresses the issue or revisits the application of *McDonnell Douglas* more generally, we will continue to apply it.

[64]     *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 993 (W.D. Tex. 2012) (interpreting Chapter 21).

[65]     *Adams v. City of Pineland*, 2024 WL 2064384, at *5 (Tex. App.—Tyler May 8, 2024, no pet.) (citing *Tex. Dep't of Fam. & Protective Servs. v. Howard*, 429 S.W.3d 782, 790 (Tex. App.—Dallas 2014, pet. denied)); *accord Tex. Dep't of Aging & Disability Servs. v. Comer*, 2018 WL 521627, at *4 (Tex. App.—San Antonio Jan. 24, 2018, no pet.).

determining whether a function is essential, we consider among other things, written job descriptions.[66]

TDI's evidence includes Thomas's written job description, which includes a bulleted list of "essential tasks." Thomas points out that there is no specific entry for training newly hired examiners. But we construe written instruments as a whole rather than focusing on specific words and phrases.[67] The "General Description" in the first paragraph of his job description says the "[w]ork involves" three general categories, one of which is *supervising and training other examiners*." A bulleted list of "essential functions" follows, along with the percentage of time each task should take. These items include "plans and initiates financial statutory examinations"; "acts as Examiner in charge and interacts directly with managerial personnel during examination of insurers-including multi-state insurers"; "supervises assisting examiners as assigned" and "other duties as assigned." Reading the list together with the opening paragraph, "training examiners" is one of the "other duties as assigned" that are no less essential for not being specifically enumerated.

*Retaliation*

To establish a prima facie case of retaliation, an employee must show that (1) he engaged in protected activity, (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.[68] TDI argues that Thomas failed to adequately plead the first two elements. [CR 29-32].

---

[66]     *Adams*, 2024 WL 2064384, at *5. The other non-exclusive factors include (1) the employer's judgment about whether the function is an essential one, (2) the amount of time that the employee spends on the function, (3) the consequences of allowing the employee not to perform it, and (4) work experience of persons holding the position. *Id.* (citing *LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 300 n.3 (Tex. App.—Beaumont 2007, no pet.)).

[67]     *See Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 343 (Tex. 2023).

[68]     *Alamo Heights*, 544 S.W.3d at 782.

Chapter 21 protects an employee who: "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."[69] Thomas pleaded that he was terminated as "a direct result of [his] request for accommodation and complaint of discrimination." To invoke anti-retaliation protection, an internal request for accommodation must alert the employer to the employee's "belief that disability discrimination was at issue."[70]

TDI argues that Thomas's requests for accommodation did not meet that standard, but Thomas pleaded that he brought Paul and Frederick's refusal to make reasonable accommodations and other alleged discrimination to Walker's attention, who "refused to investigate [his] complaints, [or] take corrective measures." His pleading is sufficient to allege that he engaged in a protected activity. However, his retaliation claims fail for the same reason as the discrimination and accommodation claims: Thomas failed to raise a fact issue on whether TDI's nondiscriminatory reason for the termination—his abandonment of work—was pretextual.

*Repleading*

"When a plaintiff fails to plead facts sufficient to demonstrate the trial court's jurisdiction, courts generally should afford the plaintiff the opportunity to replead unless 'the pleadings affirmatively negate the existence of jurisdiction.'"[71] Thomas's pleadings affirmatively negate jurisdiction over the FMLA and ADA claims but not necessarily over the Chapter 21 claim. However, Thomas already amended his pleading in response to TDI's jurisdictional plea. Once a defendant's plea gives the

---

[69]    TEX. LABOR CODE § 21.055.

[70]    *Lara*, 625 S.W.3d at 60.

[71]    *Fraley*, 664 S.W.3d at 101 (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004)).

16

plaintiff notice of the jurisdictional defect, and the plaintiff responds with an amended pleading that is still insufficient, the trial court should dismiss the case with prejudice.[72] Thomas is not entitled to an opportunity to amend.[73]

## CONCLUSION

We reverse the district court's order and render judgment dismissing Thomas's claims against TDI.

/s/  Scott A. Brister
Scott A. Brister
Chief Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

Concurring Opinion by Justice Farris

---

[72]  *Id*.; *accord Matzen v. McLane*, 659 S.W.3d 381, 396 (Tex. 2021) (noting court would deny plaintiff's request to amend "because he has already been permitted to amend his petition to no avail").

[73]  Because he is not entitled to an opportunity to amend, there is no reason for us to consider TDI's argument that the trial court lacked jurisdiction over his request for punitive damages. However, we note that Chapter 21 permits a complainant to "recover punitive damages against a respondent, *other than a respondent that is a governmental entity*." TEX. LABOR CODE § 21.2585(b) (emphasis added).